## CAPRON v STANDARD MORTGAGE CO.

Ohio Appeals, 9th Dist, Summit Co

No 2978. Decided May 4, 1938

456

John M. Jarboe, Akron, and Rockwell, Grant, Doolittle, Thomas & Buckingham, Akron, for appellant.

Colton & Wendt, Akron, and Slabaugh, Seiberling, Huber & Guinther, Akron, for appellee.

## OPINION

By STEVENS, PJ.

Prior to April 9, 1929, negotiations were conducted between Fred M. Capron and The Standard Mortgage Co., looking toward the procuring of a loan from said company for the construction of an apartment by Capron upon real estate owned by him; which negotiations culminated on that date in the following written proposal by The Standard Mortgage Co.:

"Dr. Fred M. Capron,
"507 Ohio Building,
"Akron, Ohio.
"Dear Dr. Capron:
"Confirming our various conversations beg to advise you that we propose to loan you $100,000.00 on your apartment that you contemplate building, in accordance with plans and specifications on file in our office.

"We will make you a temporary loan in this amount, say for six months, the intention being to cover the construction period. This temporary mortgage will bear interest at the rate of six percent, and figured on funds actually withdrawn. We shall charge you a commission of three percent on the $100,-000.00. After your building is completed we will then arrange for the permanent financing and agree that not less than $85,000.00 of this amount will be at not over six per cent interest. The amount over and above the $85,000.00 we will carry in a subordinate mortgage and that amount to bear interest at the rate of seven percent per annum, computed and payable semi-annually and will be for a two-year period calling for four equal quarterly payments of principal.

"We shall disburse our funds on architects' estimates from time to time and make these funds available for

you to be used in the payment of your material and labor bills. We shall, however, not undertake to make any disbursements from our loan until the building has progressed to such a point where you have a clearly established equity of $45,000.00, over and above the land, which equity shall be represented by material and labor in the building and paid for.

"We believe we have touched the main features about which we have talked from time to time and trust that this arrangement may be mutually satisfactory and we thank you for the business and trust that your undertaking will be entirely satisfactory.

"Very truly yours,
"THE STANDARD MORTGAGE CO.,
"(Signed) W. A. Cope.
"Vice President."

On the same day Capron accepted said proposal in writing as follows:

"Standard Mortgage Company,
"174 South Main Street,
"Akron, Ohio.
"Attention of Mr. Cope.
"Dear Sirs:
"I hereby accept your proposal of the $100,000 loan on my Rhodes Avenue apartment as per details contained in your letter of this date I hand you herewith the deed and abstract to property.
"Yours truly,
"(Signed) Fred M. Capron."

In pursuance of said contract, Fred Capron and Lucy Capron, on May 4, 1929, executed their promissory note in the sum of $100,000 to the defendant company, payable in 6 months and bearing interest at 6% per annum, payable semi-annually. Said note was secured by a mortgage upon all of lot 20 in the Rhodes allotment, excepting a strip of land 7 feet in width from the rear or westerly end of said lot. That mortgage was filed for record with the county recorder of Summit County, Ohio, on May 8, 1929.

Certain difficulties thereafter arose concerning the set-back line of the proposed apartment building, which necessitated the building being set back further than was originally planned, and the Caprons, on May 23, 1929, executed an additional mortgage to the defendant company for the 7-foot strip which had been excepted from the operation of the May 4th mortgage. This additional strip included the ground upon which a 14-car garage was partly located.

The mortgage of May 23 was filed for record on May 24, 1929.

In accordance with the terms of the contract, construction was started upon said apartment building on May 14, 1929, and was continued without demand upon the defendant company for money under its mortgage, until August 30, 1929, at which time Capron had invested therein approximately $46,500 in cash and $30,000 in labor and material which he had procured upon his own credit.

On November 1, 1929, H. L. Thomas, d.b.a. H. L. Thomas Co., filed for record with the county recorder of Summit County, Ohio, an affidavit for a mechanic's lien in the amount of $6,-598.15, which was claimed to be due him for labor and material furnished Capron in the construction of said apartment building.

The record discloses that Capron discussed this matter with Mr. Cope, vice president of The Standard Mortgage Co., and was advised by said Cope to fight said lien because of a counterclaim which Capron had against Thomas.

At that time there remained in the hands of the mortgage company $52,000 of the proceeds of said $100,000 loan.

Construction of said building continued to February 10, 1930, at which time the building was completed without further mechanics' liens or other liens being impressed upon said property.

On August 26, 1930, in pursuance of said agreement, the Caprons executed and delivered, to The Standard Mortgage Co., two notes and two mortgages upon said property: the first note being for $85,000, bearing interest at 6%, and due in ten years, and the second

note for $15,000, bearing interest at 7%, and due in two years. In addition thereto, a note for $2,826.49, covering interest upon the original mortgage of $100,000, was executed and delivered by the Caprons to the defendant. and this note, together with the one for $15,000, was secured by a second mortgage executed and delivered to the defendant contemporaneously with the notes—in strict compliance with the contract of the parties entered into before the construction of the building was commenced.

Both of these latter mortgages were left for record on November 7, 1930; the $85,000 note and mortgage having been assigned to the Lincoln National Life Insurance Co. on November 4, 1930, which assignment, of course, was recorded with the mortgage.

In December, 1929, the apartment building had been partially rented to tenants by Capron, and he collected the rents and applied them to upkeep, maintenance, and the liquidation of outstanding unsecured obligations. On December 9, 1930, the Caprons executed an assignment of rent to the mortgage company, by the terms of which the mortgage company agreed to manage the property and collect the rents, to pay therefrom the upkeep and operating expenses, taxes, and principal and interest payments due on its mortgages, and to distribute, pro rata, among general creditors, any balance remaining.

On November 12, 1929, H. L. Thomas filed a suit against the Caprons, seeking a foreclosure of his mechanic's lien upon said premises; to which petition the Caprons filed an answer, and on August 26, 1930, they filed their second amended answer thereto, together with a counterclaim against Thomas.

Negotiations were carried on between the Caprons and Thomas whereby a compromise settlement of said suit was reached, and Capron then instructed the mortgage company to pay said agreed amount of $6,300 for the money remaining in its hands, which at that time was $8,625. This the mortgage company refused to do, and on December 10, 1930, the day after said rent assignment was made, it advised Capron, through its vice president, that it would not release further money on the loan which it had made, and would foreclose its mortgage and take over the property.

Thereafter the mortgage company filed an answer and cross-petition in the Thomas suit, seeking a judgment on its $100,000 note, and the foreclosure of its mortgage securing that note. No pleadings were filed by the Caprons to the cross-petition of defendant, seeking judgment upon its note for $100,000 and foreclosure of the mortgage securing said note.

On January 14, 1931, a decree of foreclosure was entered, and thereafter the premises were sold, resulting in a substantial deficiency judgment against the Caprons.

The entry of foreclosure was approved by Whittemore & Motz, as attorneys for Capron, who represented the Caprons in the Thomas lien case, but the record evidence shows that, as to the judgment of defendant, this was done without the knowledge of the Caprons and without authorization therefor.

Thereafter, Capron instituted the instant action to recover damages alleged to have been sustained by him, because of defendant's breach of its contract. The case was submitted to a jury, and at the conclusion of the plaintiff's evidence, defendant made a motion to direct a verdict in its favor, or in the alternative to direct the jury to return a verdict for plaintiff for nominal damages only. The first branch of the motion was overruled by the trial court; the second was sustained, and the jury instructed to return a verdict for plaintiff in the sum of $5. That was done, and judgment was thereafter entered on the verdict. Appeal on questions of law brings the cause before this court.

The propositions urged by the appellant (Capron) are:

1. That the trial court erred in limiting recovery to nominal damages.

2. That defendant's claim of res ad-

judicata or estoppel has no basis in law.

In approaching the solution of this case, one thing must be borne in mind: which is that at all times the mortgage company had full knowledge of the use for which and the manner in which the money which it had agreed to lend to Capron was to be utilized, and, further, that it had knowledge that Capron would largely if not entirely dissipate his own assets before he called upon the mortgage company for any money under its mortgage.

The mortgage company being possessed of that knowledge, what, then, was the rule of damages applicable because of the mortgage company's breach of its contract to loan the full amount of money it agreed to loan to Capron?

1 Restatement of the Law of Contracts, Sec. 343, at p. 563, states the following:

"Damages for breach of a contract to lend money are measured by the cost of obtaining the use of the money during the agreed period of credit, less interest at the rate provided in the contract, plus compensation for other unavoidable harm that the defendant had reason to foresee when the contract was made." (Emphasis ours).

The record in this case shows without contradiction that, in this community, at the time of the breach by the mortgage company, money was not elsewhere available with which to refinance Capron's project, with the possible exception of insurance companies, and there is no positive evidence that it could have been there obtained. In fact, the contrary appears from this record, because the evidence shows that this defendant was unable to discount its $85,000 mortgage which it had assigned to The Lincoln National Life Insurance Co.

This, coupled with the knowledge of the mortgage company concerning the facts of the entire transaction, brings us to a consideration of whether or not Caprons were entitled to "compensation for other unavoidable harm that the defendant had reason to foresee when the contract was made."

Ohio is committed to the rule announced in Hadley v Baxendale, 9 Exch. 341, 156 Eng. Rep. 145, by the decisions of the Supreme Court of Ohio in **Western Union Telegraph Co. v Sullivan, 82 Oh St 14,** and **Ackerland & Co. v L. & N. Rd. Co., 83 Oh St 293.** That rule is substantially as follows:

If the defendant was not apprised of special circumstances existing when the contract was made, then he would be liable for only such damage as would ordinarily be expected to follow from a breach of the contract. If, however, special circumstances existing at the time the contract was made were actually communicated by plaintiff to defendant, and thus known to both parties, then the defendant would be liable in damages for such amount as it might reasonably be contemplated would ordinarily flow from a breach of contract under such special circumstances.

It is urged by counsel for the mortgage company that money was readily available in April of 1929, and that other lenders were competing with the mortgage company to make the loan to Capron, and that it accordingly could not have been within the contemplation of the parties, at the time of the making of the contract, that, in the event of a breach by the lender, Capron would find it impossible to obtain money elsewhere with which to refinance his project, and would therefor sustain substantial damages.

It may be conceded that such might be the case, if those were all the facts which need to be considered. However, it may be said to have been reasonably within the contemplation of the defendant at the time the contract was executed, that, where the liquid assets and credit of the borrower were to be dissipated by expenditure in construction of the building in compliance with his contract, and where a mechanic's lien of $6,600 was perfected upon the premises, which could not be discharged be-

cause of the mortgage company's refusal to release money in its hands subject to the order of the borrower, and where premises costing $175,000 were encumbered by mortgages in excess of $200,000 held by the mortgage company, and by judgment liens procured to be placed upon said premises by the machinations of the mortgage company's officer, it would be impossible for the borrower, under such circumstances, to refinance said premises, as the record here shows was the case; under such circumstances it may be said to have reasonably been within the contemplation of the defendant, at the time the contract was entered into, that a breach by the lender would in all probability result in substantial damages to the borrower, and not merely nominal damages; and this is especially true where the contract of the parties has in large part been executed, as was here the case.

Confronted with such a situation, we are of the opinion that Capron was not limited to the recovery of nominal damages, but was entitled to recover the damages naturally flowing from breach by defendant, unless defendant's claim of estoppel should have prevailed to prevent any judgment in favor of plaintiffs.

Further, the record herein shows plaintiff to have sustained substantial damages, but the trial court limited plaintiff's recovery to nominal damages only, on the theory that plaintiff was charged with responsibility of showing reasonable effort on his part to obtain a loan to refinance his property, and thereby mitigate his damage.

It must be remembered that defendant offered no evidence in this case except the exhibits offered in connection with its cross-examination of plaintiff's witnesses, and it should also be noted that the defendant did not rest its case; and plaintiff having made a showing of substantial damages, the burden was then upon defendant to offer evidence in mitigation of that damage.

Carpenter v Warner, 38 Oh St 416.

We are of the opinion that as the case was when the trial court rendered final judgment (plaintiff having introduced substantial evidence of every material fact necessary to have the case submitted to the jury), the court could not properly make final disposition of the case, and thus deprive plaintiff of his right to have the jury determine the issues of fact in the case.

The court was right in determining that it would not render a judgment in favor of the defendant, but it had no right at that time, the defendant not having rested, to render any judgment in favor of the plaintiff; and even if the plaintiff had rested and the court had had such right, the court would nevertheless have been in error in determining that as a matter of law no more than nominal damages could be recovered.

As to the second claim—i. e., the claim of estoppel, it was urged to the trial court that the breach of contract relied upon in this case was available to Capron as a defense to the defendant's cross-petition for judgment on its $100,000 note, and foreclosure of the mortgage securing that note, and it is asserted by defendant that "All the damages which he (Capron) claims flow from the sale of the property. If the property had not been sold in 1931, or if it had been sold on the petition of Thomas, his present claim would have no existence."

That argument overlooks the claim of Capron that, because of defendant's breach by failure to pay over, on his order, the money with which to discharge the Thomas lien, he (Capron) was disenabled to release the property in question from the lien of Thomas, and that Thomas, because thereof, was entitled to a foreclosure of his lien; so, irrespective of whose claim furnished the basis for the foreclosure, the entire result flowed from defendant's refusal to pay over the money which it was obligated to pay.

So far as the $100,000 note and mortgage were concerned, they had been superseded by the later notes and mortgages executed and delivered by the

Caprons, and accepted by defendant. and were entitled to be cancelled. Upon those first instruments which furnished the basis for defendant's claim for judgment and foreclosure, there remained in defendant, at the time of filing its answer and cross-petition, no legal right to judgment and foreclosure upon the instruments sued upon, if defense had been made by Capron on that ground.

The parties had by their contract agreed that those instruments were to be discharged by the execution and delivery by plaintiff and the acceptance by defendant of the later financing instruments; and the retention by defendant of the first instruments after acceptance by it of the later executed instruments, one of which had been assigned, left the first note and mortgage in the position of being paid and discharged.

The question of plaintiff's avoiding the sale of his property on foreclosure by defendant was not, however, the only question to be considered. There was also the question of the special damages accruing to plaintiff by reason of defendant's refusal to comply with its contract to pay over money.

This latter was not a subject of defense to the foreclosure, but was an independent cause of action existing in plaintiff, which he was not required to set up in the foreclosure. It was in the nature of a counterclaim against defendant and not strictly defensive matter.

In **Rothman v Engel, 97 Oh St 77**, syllabus 1, the Supreme Court of Ohio stated:

"1. Facts that are **strictly defensive**, and which, if pleaded in an action at law, would state a good defense, do not constitute a counterclaim. And if the defendant does not avail himself of such defense, he will be barred from utilizing it in a subsequent suit."

We hold that plaintiff is not estopped to maintain this action by reason of his failure to interpose, as a defense to the foreclosure sought in the previous action by defendant, the matter here set forth as constituting his cause of action against defendant, for the reason that said facts are not "strictly defensive."

Under the facts presented by this record, we find that plaintiff was not estopped from maining this suit.

The judgment will be reversed, and the cause remanded for further proceedings according to law.

WASHBURN, J., and DOYLE, J, concur.